UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH CAMALO,

       Plaintiff,

v.

XEROX CORPORATION, et al.,

       Defendants.

_____/

Case No. 16-cv-13667

HON. MARK A. GOLDSMITH

## <u>OPINION & ORDER</u>
## <u>GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkts. 69, 70)</u>

This matter is before the Court on Defendants Xerox Corporation and Gregory Wymore's motion for summary judgment (Dkts. 69, 70). The issues have been fully briefed. Because oral argument will not aid the decisional process, the motion will be decided based on the parties' briefing. <u>See</u> Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the Court grants Defendants' motion.

### I. BACKGROUND

Plaintiff Deborah Camalo is a former employee of Defendant Xerox Corporation, where she worked under Defendant Gregory Wymore. Camalo worked in the sales division as a Graphic Communication Solutions Executive ("GCSE"). Camalo has a BBA in management and over forty years of sales experience selling graphics and large equipment. <u>See</u> Statement of Add'l Mat. Facts, ¶ 59 (Dkt. 66). By 2014, Camalo was the only woman reporting to Wymore. <u>Id.</u> ¶ 60.

Throughout her time at Xerox, Camalo received at least six communications that were either letters of concern or formal warnings designed to serve as warnings regarding her performance. <u>See</u> 2/1/2011 Letter of Concern, Ex. 5 to Def. Mot. for Summ. J. (Dkt. 69-6);

1

4/12/2011 Formal Warning, Ex. 6 to Def. Mot. for Summ. J. (Dkt. 69-7); 4/10/2014 Letter of Concern, Ex. 7 to Def. Mot. for Summ. J. (Dkt. 69-8); 8/15/2014 Formal Warning, Ex. 8 to Def. Mot. for Summ. J. (Dkt. 69-9); 9/24/2014 Formal Warning Feedback, Ex. 9 to Def. Mot. for Summ. J. (Dkt. 69-10); 11/12/2014 Warning Performance Feedback, Ex. 10 to Def. Mot. for Summ. J. (Dkt. 69-11). In August 2014, Camalo was placed on a Performance Improvement Plan ("PIP"). See 8/22/2014 Email, Ex. 19 to Def. Mot. for Summ. J. (Dkt. 69-20).

In late 2014, Xerox undertook a reduction in force ("RIF"), which included cutting one sales position in its Southeast Michigan office. Statement of Mat. Facts ¶ 15 (Dkt. 69). As part of this process, Wymore assessed each GCSE in a variety of categories: job knowledge, flexibility, execution, effectiveness, business skills, and problem solving/decision making. Id. ¶ 16. Camalo received a score of "14" out of a possible "30", while the other GCSEs in the region received scores of "23" (Employee RJ), "20" (Employee GJ), and "18" (Employee MZ). Id. ¶ 23. Camalo was informed that she was selected for the reduction in force on December 10, 2015. Id. ¶ 26. She challenges her termination under Title VII and the Elliot-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, et seq.

Camalo is not challenging the reduction in force itself. Rather, she is challenging the score she received in the rating process. Wymore was deposed in this case, during which he justified his scoring decisions. Camalo received a "2" on job knowledge because she had less tenure and less experience with the internal Xerox systems, and because she was not proficient with her knowledge of an important product line. See Wymore Dep., Ex. 3 to Def. Mot. for Summ. J., at 192-194 (Dkt. 69-4). She scored a "3" on flexibility, because Wymore did not feel she was listening to coaching and counseling. Id. at 201. She scored a "2" on execution because Xerox had received feedback from pricing managers that they were continuing to cover materials that

had already been covered with her previously. Id. at 202. Wymore received similar feedback from other sales representatives. Id. at 207. She received a "2" on effectiveness because she was "not effectively demonstrating some of the tools that were taught during the Challenger sales training session" and was unable to "provide an effective executive summary or value proposition." Id. at 211-212. She received a "3" in business skills because she was effective and met objectives, id. at 215, and a "2" on problem solving/decision making because she had less experience and was not "as comfortable with the Xerox tools such as Valuequix, and working through issues and problems," id. Based on these scores, Xerox says it chose to lay off Camalo in the reduction in force.

Camalo disputes the scoring, arguing that she received a lower score as a result of unlawful discrimination. She claims that her performance was objectively superior to her male counterparts, arguing that she had a higher average Commissionable Actionable Revenue ("CAR") from 2011-2014 than two of her three counterparts. See Revenue Chart, Ex. 9 to Pl. Resp. (Dkt. 68-3).[1] She notes that she had the highest gross profit quotas in 2013-2014. Id. Camalo also points to other instances of allegedly discriminatory actions in the years leading up to her termination, including distribution of accounts favoring male GCSEs, see Statement of Add'l Mat. Facts ¶ 6, and disproportionate discipline of Camalo for poor sales numbers, see id. ¶¶ 72-82. Camalo also claims that Wymore created a discriminatory atmosphere by making disparaging comments about working women and criticizing Camalo disproportionately in the office. See id. ¶¶ 99-100. Except for one August 2014 report which was withdrawn within hours, in which Camalo accused Wymore

---

[1] Xerox notes in response that the assessment period ran from January 1, 2012 through October 31, 2014, see Wymore Dep., Ex. 2 to Pl. Resp., at 229-230 (Dkt. 66-3), during which she had the lowest cumulative CAR. See Revenue Chart.

of favoring a male employee over her, Camalo never reported any of Wymore's supposed discriminatory acts internally.  See Statement of Mat. Facts ¶¶ 37-42.

Camalo filed a claim with the EEOC on September 29, 2015, listing October 20, 2014 through December 10, 2014 as the dates during which discrimination occurred.  See EEOC Charge, Ex. 45 to Def. Mot. for Summ. J. (Dkt. 69-44).  The charge was dismissed on July 20, 2016.  See EEOC Dismissal, Ex. 46 to Def. Mot. for Summ. J. (Dkt. 69-45).

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson, 477 U.S. at 255.

When bringing a gender-discrimination claim, a plaintiff "may prove her claim using either direct or circumstantial evidence. . . . Where a plaintiff relies on circumstantial evidence, courts typically apply the three-part burden-shifting framework developed by the Supreme Court

in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment." Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775-776 (6th Cir. 2016).

Under the burden-shifting framework, "the plaintiff first has the burden of proving a prima facie case of discrimination; if she is successful, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions; if the defendant articulates a non-discriminatory reason, the plaintiff has the opportunity to prove that the proffered reason is pretextual." Shrivastava v. RBS Citizens Bank, N.A., 227 F. Supp. 3d 824, 833 (E.D. Mich. 2017) (internal quotation marks omitted).

The first step, proving a prima facie case, requires that the plaintiff "establish that (i) she is a member of the protected class; (ii) she was qualified for her job and performed it satisfactorily; (iii) she suffered an adverse employment action; and (iv) she was replaced or treated less favorably than a similarly situated person outside her protected class." Id. (internal quotation marks omitted). In a reduction-in-force case, however, the fourth factor is not necessary; rather, "the plaintiff must produce additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Gragg v. Somerset Technical College, 373 F.3d 763, 767 (6th Cir. 2004). If the plaintiff meets those requirements, the burden then shifts to the defendant "to articulate some legitimate non-discriminatory reason for the employee's rejection." Shrivastava, 227 F. Supp. 3d at 835 (internal quotation marks omitted). Finally, the burden shifts back to the plaintiff to prove pretext, which she can do "by demonstrating that: (i) the proffered reasons had no basis in fact; (ii) the reasons did not actually

motivate the decisions; or (iii) the reasons were insufficient to motivate the actions." Id. at 836 (internal quotation marks omitted).

### III. ANALYSIS

**A. Prima Facie Case**

There is no dispute that Camalo is a member of a protected class and that she suffered an adverse employment action. Xerox does dispute that Camalo was qualified for her job, arguing that she was "not meeting [her] employer's legitimate expectations and was not performing to [her] employer's satisfaction." Floyd v. Sverdrup Corp., 23 F. App'x 223, 225 (6th Cir. 2001). Typically, this inquiry "should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." Shrivastava, 227 F. Supp. 3d at 833-834 (internal quotation marks omitted). However, due to the circumstances of this case, the demonstrated possession of required skills is not an appropriate consideration at the prima facie stage. A court may not look to the non-discriminatory reason offered by the defendant when determining whether a plaintiff has made a prima facie case. See Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-661 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff."). Although Xerox cites the reduction in force as the reason for terminating plaintiff, her job performance, i.e. her demonstrated possession of required skills, played at least some role in that process. See HR 204.3, Ex. 27 to Def. Mot. for Summ. J. at 5 (Dkt. 69-27) ("Employees to be retained are identified based on consideration of appropriate factors, including (but not limited to), the skills requirements of the business, employee performance as reflected over the past three years and length of employee service.") (emphasis

added); 11/20/2014 Email, Ex. 25 to Def. Mot. for Summ. J. at 2 (Dkt. 69-25) (explaining that job performance factored into the "execution" score). The Court may not consider this argument regarding her job performance – a factor which played at least some role in Defendants' purported legitimate non-discriminatory reason for termination – at the prima facie stage, because doing so would deprive Camalo of the opportunity to show that the reason is pretextual. Accordingly, the Court concludes, based on Camalo's education and experience, that she was qualified for position.

This leaves whether Camalo has produced "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Gragg, 373 F.3d at 767. The Sixth Circuit has further explained that if a "plaintiff was truly singled out for discharge" based on discriminatory reasons, "she should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case." Barnes v. GenCorp Inc., 896 F.2d 1457, 1465-1466 (6th Cir. 1990). A plaintiff can do so by showing that she "possessed qualifications superior to those of" a male colleague in the same position or by showing "that the employer made statements indicative of a discriminatory motive." Id. at 1466. The Court will address each of these alternatives in turn.

**1. Qualifications Superior to a Male Colleague**

Camalo relies on two cases in attempting to show that she had qualifications superior to those of a male colleague. First, she cites Rachells v. Cingular Wireless Employee Servs., LLC, 732 F.3d 652 (6th Cir. 2013), in which the Sixth Circuit reversed the district court's grant of summary judgment. In that case, the plaintiff, who was terminated due to an RIF in February 2005, showed he had superior qualifications by pointing to various awards he won between 1999 and 2003 and providing evidence that he was the highest performing employee in 2003. The defendant cited his poor performance in 2004 as the reason for his firing. The Sixth Circuit

determined that "viewed in the light most favorable to Rachells, evidence of Rachells' many accolades and awards, as well as the fact that he had the best 2003 performance review and the highest 2002, 2003, and 2004 attainment percentages of any of his Cingular peers, could lead a reasonable jury to conclude that Rachells was consistently Cingular's highest-performing employee and remained so in 2004." Id. at 664. Camalo also cites Williams v. General Electric, Co., 269 F. Supp. 2d 958, 967 (N.D. Ohio 2003), in which the trial court denied summary judgment on the question of age discrimination following termination of the plaintiff after an RIF, finding that the plaintiff "could present evidence that he was more qualified than the younger workers GE did not terminate." In that case, the district court determined that a jury could conclude that GE acted irrationally in not considering plaintiff's sales record in the year before he was terminated, during which he had the best sales record among his comparables. Id. at 969.

Xerox responds that the cases cited are inapposite. Xerox argues that Rachells involved a plaintiff who identified his "superlative performance" and was one of the best performers in the country. See Rachells, 732 F.3d at 664. Similarly, the plaintiff in Williams had the best sales record among his comparables. But here, Xerox argues, Camalo has not shown that she has a superlative record. In the three years leading up to the RIF, Camalo had the worst performance among the four GCSEs in terms of CAR, performing slightly worse than MZ and much worse than her other two counterparts.

The Court agrees with Xerox that the cases cited by Camalo are distinguishable. Camalo was not a better performer than her colleagues, let alone a "superlative" performer like the plaintiff in Rachells. Camalo argues that she had the second-highest average CAR from 2011 to 2014 out of the four GCSEs. However, as Xerox notes, this was not the period considered for the RIF assessment. Rather, the RIF assessment was based on the period from January 1, 2012 to October

31, 2014. See Wymore Dep., Ex. 2 to Pl. Resp. at 229 (Dkt. 66-3). During that time, Camalo had the lowest CAR among the four GCSEs; her cumulative CAR was 219.7%, while the other three totaled 377.1%, 259%, and 220%. See Revenue Chart. During that same time period, she ranked third out of the four GCSEs in both gross profit, see id., and the "sales numbers used for the President's Club during the assessment period," see Def. Reply at 6 (Dkt. 75); Sales Chart, Ex. 28 to Def. Mot. for Summ. J. at PageID.2674 (Dkt. 70-12).[2]

As is clear from the numbers, Camalo was far from the "superlative" performer that the Rachells plaintiff was. In Rachells, the defendant did not dispute that the plaintiff was a high-performing employee between 1999 and 2003, but simply argued that his performance declined in 2004 – the year of performance considered for the RIF. Rachells, 732 F.3d at 664. The Sixth Circuit determined that the plaintiff's sustained success, along with a high-ranking attainment performance in 2004, could lead a reasonable jury to conclude that the plaintiff remained a superlative performer in the year considered for the RIF. See id. In Williams, 269 F. Supp. 2d at 969, the other case cited by Camalo, the plaintiff also had a better sales record than the other RIF candidates. Here, however, Camalo was nowhere near the highest-performing employee and points to no additional evidence beyond the numbers. Further, Camalo asks that the Court consider one additional year, 2011, in its computation of sales numbers to supplement the three-year period considered by Xerox; this is in contrast to Rachells, who asked for consideration of a five-year period beyond the one year considered by the defendant in that case. By asking to tweak the relevant review period by one year, Camalo appears to seek manipulation of the data. By contrast, there is no evidence that Xerox cherry-picked the three-year period specifically to single out

---

[2] Defendants do not explain the relevance of "[t]he sales numbers used for the President's Club."

9

Camalo,[3] nor is there any reason that Xerox should be compelled to consider a four-year period rather than the three-year period.

Accordingly, Camalo has not brought forth facts showing that she was a superior performer to any of her male colleagues.[4]

### 2. Employer Statements Indicative of Discriminatory Motive

Camalo also attempts to meet the fourth prong by showing "that the employer made statements indicative of a discriminatory motive." Barnes, 896 F.2d at 1466. She attempts to do so through two avenues. First, she argues that Wymore made comments that provide direct evidence of a discriminatory atmosphere. Second, she argues that Wymore made comments that show circumstantial evidence of a discriminatory atmosphere.

Camalo first argues that there existed a discriminatory atmosphere, which, she contends, indicates that the RIF targeted her. She claims that Wymore made comments specifically disparaging working women, including saying that a female sports announcer would be better off typing and that his wife would be better off making bread because she had "some silly job at a bank." Camalo Dep., Ex. 1 to Def. Mot., at 157-159 (Dkt. 69-1). However, the only case cited by Camalo in which statements were enough to show a discriminatory motive pertained to an employer who specifically stated that he wanted to force older employees out. See LaPointe v.

---

[3] This three-year period was specifically prescribed in the Xerox Human Resources Manual. See HR 204.3.

[4] Camalo also argues that Wymore testified that he evaluated GCSEs for past and future performance, but his scoring seems to reflect that he actually did not evaluate future performance; she specifically argues that Wymore did not actually consider "outlook." See Pl. Resp. at 22. However, the portions of the record that she cites for this claim have no relation to Wymore's RIF evaluation process.

United Autoworkers Local 600, 8 F.3d 376, 379 (6th Cir. 1993). That is not the case here, as Camalo has pointed to no statements to indicate that she was fired because of her gender.

Camalo also attempts to show that the employer made statements indicative of a discriminatory motive because he disparaged Camalo as opposed to her male co-workers. However, evidence of such statements "must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of" her protected status. Terre v. Hopson, 708 F. App'x 221, 225 (6th Cir. 2017). In the age-discrimination context,[5] courts consider four factors: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." Peters v. Lincoln Elec. Co., 285 F.3d 456, 478 (6th Cir. 2002).

Here, Camalo has presented no evidence that the statements made were related to the decision-making process. See Lockett v. Marsh USA, Inc., 354 F. App'x 984, 994 (6th Cir. 2009) (finding that, in gender discrimination cases, "[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.") (alterations in original) (internal quotation marks omitted). Nor has she shown that they occurred close in time to the RIF decision, see Knox v. Neaton Auto Products Mfg., Inc., 375 F.3d 451, 457 (6th Cir. 2004) (noting, in a gender discrimination case, that arguably discriminatory comments were not "sufficiently close in time to the allegedly discriminatory action"), or that they were specifically targeted at her. Additionally,

---

[5] These factors have also been considered in the race-discrimination context. See Ragland v. Von Maur, Inc., No. 08-11783, 2010 WL 1139330 at *6 (E.D. Mich. Mar. 24, 2010).

11

Wymore's boss, Kirk McLean, believed that the assessments were fair and signed off on them before the termination decision was made by McLean's boss, McLean Dep., Ex. 2 to Def. Resp. at 83-84 (Dkt. 69-3); there is no evidence that McLean or his boss made any discriminatory statements. Accordingly, the statements do not constitute evidence of a discriminatory motive.

### C. Additional Arguments

Camalo also provides a host of other arguments attempting to show circumstantial evidence of discrimination; none passes muster.

She argues that Wymore favored her counterparts in the distribution of accounts following a retirement and in other decisions made in the years leading up to the RIF. Defendants dispute the factual premise of this claim. Regardless, Camalo does not even attempt to explain how these actions are evidence that she was singled out due to her gender, rather than legitimate business decisions made by an employer.

Next, Camalo claims that Wymore would roll his eyes, dismiss her suggestions, and would refer to complaints as "go[ing] Debbie on me." "While these facts indicate this working relationship was not cohesive, none suggest that [Camalo] was being singled out because of her gender." Slapak v. Tiger Mangement Group, LLC, 594 F. App'x 290, 295 (6th Cir. 2014); accord Knox, 375 F.3d at 457 (noting that comments had not "been linked in any way to sex-based discrimination-as opposed to sex-neutral animus between Knox and Matlock.").

Camalo also argues that she was singled out for disparate discipline by being placed on a PIP in 2014, but Wymore clearly explained that she was placed on a PIP because "going into 2014 the territory business plan that she delivered showed that she was going to be short of making her quarterly, half year, and full year plan." Wymore Dep. at 106-107. This was not the case for any of Camalo's counterparts. See id. at 108. Camalo does not refute Wymore's rationale, instead

12

choosing to ignore Wymore's deposition testimony and claim that she was targeted for a PIP instead of her worse-performing counterparts. Camalo's assertions on this point present an alternate reality with no basis in the record and no attempt to counter the evidence presented by Defendants.

Because Camalo was a below-average performer in the category selected for evaluation, and because Camalo has not shown any further evidence that she was singled out for termination due to her gender, the Court concludes that she has not established a prima facie case.

**B. Pretext**

Even assuming that Camalo had established a prima facie case, there is no real dispute that Defendants have offered a legitimate, non-discriminatory reason for the firing of Camalo, specifically that she received the lowest score in the RIF process. Thus, the burden shifts back to Camalo to prove that this proffered reason is pretextual. Camalo must demonstrate that: "(i) the proffered reasons had no basis in fact; (ii) the reasons did not actually motivate the decisions; or (iii) the reasons were insufficient to motivate the actions." Shrivastava, 227 F. Supp. 3d at 833. In the RIF context, these alternatives manifest themselves into the following options: a plaintiff "can argue that her own termination does not accord with the RIF criteria supposedly employed, . . . can adduce evidence that her evaluation under the defendant's RIF criteria was deliberately falsified or manipulated so as to effect her termination or otherwise adversely alter her employment status, . . . [or] can adduce evidence that the RIF is more generally pretextual." Beaord v. Seagate Technology, Inc., 145 F.3d 1159 (10th Cir. 1998).

Camalo argues that Wymore's scoring does not accord with the RIF criteria supposedly employed, as he did not "pay specific attention to objective, sustained performance data," as instructed. Pl. Resp. at 27 (Dkt. 66). Camalo specifically disputes her score on the execution

13

factor, arguing that she was scored lower than her male counterparts despite superior performance. Camalo contends that, as the execution skill was the only criterion that was partially objective, Wymore's mis-scoring of it could lead a jury to conclude that the scoring of the remaining subjective criteria was suspect. Camalo also argues that Wymore did not document his complaints and that Defendants used inconsistent justification for the termination.

Camalo's argument falls short for the same reasons explained above. Camalo argues that Wymore was instructed to pay specific attention to objective criteria, i.e., her better performance, for the execution score, but that he instead scored her based on "non-RIF criteria" and allegations which have been disputed. Pl. Resp. at 27. Her argument again relies on the premise that she was a superior performer, but that is not borne out by the numbers relied on by Defendants in the termination decision. Camalo had the lowest CAR for the relevant time period, see Revenue Chart, and thus it cannot be surprising that she was rated the lowest for the execution skill which required Wymore to look to CAR,[6] see Employee Assessments, Ex. 32 to Def. Resp. at PageID.2453 (Dkt. 69-23); Wymore Dep. at 229. Camalo makes no attempt to discredit the remaining scores except to say that Wymore's subjective scoring cannot be trusted if his objective scoring shows bias; this argument fails, as there has been no bias shown in the objective scoring. There is nothing inherently wrong with an employer using subjective factors in a reduction-in-force decision, see Beck v. Buckeye Pipeline Services Co., 501 F. App'x 447, 451 (6th Cir. 2012) ("[T]he use of subjective evaluation criteria does not by itself show discrimination, particularly in a reduction in force case."), and Camalo has not shown that the subjective criteria were used to disguise

---

[6] Camalo scored a "2" on execution, while MZ – who had only a slightly better CAR than her – scored a "3". But this can be explained because execution was partly subjective, requiring Wymore to consider factors such as anticipating problems, demonstrating initiative, and following up on details and tasks with others. See Employee Assessments at PageID.2454.

discriminatory action. Accordingly, Camalo has not shown that the RIF scoring was a pretext for discrimination.

Camalo also attempts to show pretext by arguing that Xerox's rationale for the termination shifted over time, see Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."), but Xerox has not changed its justification for the termination. Camalo observes that she was told at the time of her termination that she was not being let go due to performance, but points out that Xerox now contends in legal papers that she was not even qualified for the position. However, Camalo's own testimony contradicts this argument.

At the time of the termination, Wymore told Camalo that the decision was "based on a matrix, number of accounts and size of equipment inside each of the accounts." Camalo Dep. at 240 (Dkt. 69-1). At another point, Camalo testified that "Wymore told me that he looked at the number of accounts, that's what the matrix was all about, that it was so complicated, that he looked at the number of accounts and size of equipment . . ." Id. at 144. As is clear, Xerox and Wymore have contended all along that the termination was based on the matrix[7] and various other factors. The matrix took into account the considerations – effectiveness, execution, and problem-solving, among others – that Camalo now contends Xerox is using as a different justification. Put another way, the reasons that Xerox puts forth in this Court to argue that Camalo was not qualified, see Def. Mot. at 20-21, are the same reasons, at least in part, why Camalo received the lowest score

---

[7] The "matrix" refers to the spreadsheet on which Wymore filled in the RIF scores. See Wymore Dep. at 171 ("Q: You participated in the RIF, right? A: I did. Q: You filled out the matrix, correct? A: Yes.").

on the RIF, see generally Wymore Dep. at 192-215. Thus, it is incorrect to claim that Xerox is using changing justifications.

For these reasons, the Court concludes that Camalo cannot show that the proffered reason is pretextual.[8]

## IV. CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. 70) is granted.[9]

SO ORDERED.

Dated: February 21, 2019　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[8] Camalo also argues that she can show pretext because "Wymore did not document his complaints, could not quantify Camalo's alleged problems, did not discuss his complaints with Camalo, and his allegations are contested by Jewell and Camalo." Pl. Resp. at 28. Perhaps these factors would be relevant in determining pretext in a non-RIF case, i.e. if a plaintiff were terminated without any forewarning when no termination was required. But a reduction in force requires that an employer terminate an employee, regardless of whether the selected employee had performed unsatisfactorily or in a way that required disciplinary action. Regardless, Camalo received several performance warnings in the years leading up to the RIF, see 2/1/2011 Letter of Concern; 4/12/2011 Formal Warning; 4/10/2014 Letter of Concern; 8/15/2014 Formal Warning; 9/24/2014 Formal Warning Feedback; 11/12/2014 Warning Performance Feedback, and she was a below-average performer in the time period considered by Xerox for the RIF determination, see Revenue Chart. For these reasons, the failure to document or communicate any complaints does not prove that the scoring of the RIF was pretextual.

[9] Because the Court has granted summary judgment, it denies as moot Camalo's motion to compel (Dkt. 67), Defendants' motion to compel (Dkt. 77), and Defendants' motion to file Exhibit 17 in traditional manner (Dkt. 79). All three motions related to evidence that was sought for use at trial, and thus the granting of summary judgment means that there is no ongoing dispute as it relates to this evidence.

16

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 21, 2019.

s/Karri Sandusky
Case Manager
